UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERTO JOSE COTA,<br><br>               Plaintiff,<br><br>        v.<br><br>SANTA ANA POLICE<br>DEPARTMENT, et al.,<br><br>            Defendants. | Case No. 8:21-cv-01774-MWF-JDE<br><br>ORDER WITHDRAWING REPORT<br>(Dkt. 23) AND DIRECTING<br>PLAINTIFF TO SHOW CAUSE WHY<br>THE SECOND AMENDED<br>COMPLAINT SHOULD NOT BE<br>DISMISSED AND THE REQUEST<br>FOR STAY DENIED |

**I.**

**INTRODUCTION**

On October 21, 2021, Plaintiff Roberto Jose Cota ("Plaintiff"), a pretrial detainee at Orange County Jail, proceeding pro se and seeking leave to proceed in forma pauperis (Dkt. 2, "IFP Request"), constructively filed a Complaint under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") against Defendants Santa Ana Police Department ("SAPD"), David Valentin, J. Gallardo, Gus Morroyoqui, and John Doe.[1] Dkt. 1 ("Complaint"). The

---

[1] Under the prison mailbox rule, a document filed by a prisoner is deemed filed "at the time [he] delivered it to the prison authorities for forwarding to the court clerk." Douglas v. Noelle, 567 F.3d 1103, 1106 (9th Cir. 2009) (internal quotation marks

Complaint alleges on May 28, 2018, the defendants unreasonably seized and detained Plaintiff for over three hours, in violation of his Fourth Amendment and state law rights. Complaint ¶¶ 53-54. Plaintiff averred that he was currently detained for "events not being alleged in this Complaint or any court of law that occurred at a later date." Id. ¶ 4.

On November 23, 2021, the Court ordered Plaintiff to show cause why the Complaint should not be dismissed for failure to state a claim upon which relief can be granted based upon the statute of limitations. Dkt. 7. In response, Plaintiff argued his claims are not time barred because he is entitled to statutory and equitable tolling. Dkt. 8, ¶¶ 7-8. Separately, Plaintiff filed a Motion for Leave to File an Amended Complaint (Dkt. 9), which the Court granted. See Dkt. 11; Dkt. 12, as corrected, Dkt. 16 ("FAC"). The FAC replaced Defendant "John Doe" with Defendant Investigator Maiocco.

After screening the FAC, the undersigned issued a Report and Recommendation recommending that the FAC be dismissed, finding the Section 1983 claims to be barred by the statute of limitations. Dkt. 18 ("First Report"). Plaintiff filed objections to the First Report, asserting for the first time that his arrest and current detention stem directly from the allegedly unlawful search and seizure that comprise the basis of his civil rights suit, and requested leave to amend to add additional allegations. Dkt. 19 at 5-6 ("First Objections"). Based on Plaintiff's new allegations, the undersigned granted Plaintiff's request to file an amended complaint and withdrew the First Report. Dkt. 20. Plaintiff thereafter filed the Second Amended Complaint. Dkt. 21 ("SAC").

_____

and citation omitted). Although the envelope containing the Complaint appears to indicate it was sealed on October 22, 2021 (see Dkt. 1 at 8-9 (CM/ECF pagination), the Court will give Plaintiff the benefit of the doubt and use the date of Plaintiff's signature on the Complaint, October 21, 2021 (see Complaint at 7), as the date of delivery to prison authorities for purposes of the constructive filing date.

After screening the SAC, the Court issued a second Report and Recommendation on May 23, 2022, recommending that Plaintiff's SAC be dismissed as time barred and that Plaintiff be denied additional leave to amend. Dkt. 23 ("Second Report"). Plaintiff filed objections to the Second Report, reasserting that his claims were not time barred and requesting the Court grant a stay of his Section 1983 claims pending resolution of his state criminal proceedings. Dkt. 24 ("Second Objections"). He also requested leave to amend to add additional allegations. Id. at 10.

Because Plaintiff, in his Second Objections, seeks different relief from that contained in the SAC, including seeking a stay of proceedings, in order to fully consider Plaintiff's new request, the Court hereby WITHDRAWS the Second Report (Dkt. 23) and Orders Plaintiff to show cause why the SAC should not be dismissed and the stay request denied for the reasons discussed below, following screening of the SAC under 28 U.S.C. §§ 1915(e)(2), 1915A(a).

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

The Court summarizes the allegations contained in the SAC as follows. On May 28, 2018, Plaintiff, a tow truck operator, was stationed in a parking lot in Santa Ana, California, when he heard "sounds that clearly sounded like gunshots" coming from a nearby parking lot. SAC ¶¶ 1-2. Plaintiff drove to the nearby parking lot and observed a group of people surrounding an injured victim. Id. ¶ 3. Plaintiff then began rendering aid to the victim and instructed a bystander to call 911 and activate Plaintiff's tow truck emergency lights so as to signal the victim's location to emergency services. Id. The fire department arrived at the parking lot within minutes and began rendering aid to the victim, at which point Plaintiff returned to his tow truck. Id. ¶ 4.

Shortly thereafter, SAPD officers arrived and began interviewing witnesses. SAC ¶ 4. Plaintiff approached Defendant Gallardo, an SAPD officer, and notified him that his vehicle had a dash camera that may have captured relevant footage. Id. ¶ 5. Defendant Gallardo told Plaintiff he would be interested in interviewing him and asked Plaintiff to "wait for a few minutes," which he did. Id. Defendant Gallardo briefly interviewed Plaintiff near his tow truck, and at 10:15 p.m., before completing the interview, instructed him to move his tow truck and to turn it off so as to not waste gas. Id. ¶ 6. Plaintiff alleges he felt "compelled" to comply with Defendant Gallardo's orders and accordingly moved his tow truck and turned it off without protest, believing he "could not leave." Id. ¶ 7. Plaintiff claims Defendant Gallardo never told him that he was permitted to leave and never provided him an explanation for his detention. Id. Plaintiff further alleges he had not witnessed the shooting and had been lawfully in the area. Id.

Later that night, Defendant Maiocco, an SAPD crime scene investigator, asked to inspect the physical aspects of Plaintiff's truck's dash camera, which Plaintiff obliged. SAC ¶ 9. Defendant Maiocco also requested to review the footage stored on Plaintiff's dash camera in Plaintiff's presence, but Plaintiff refused. Id. ¶ 10. Defendant Maiocco returned the dash camera to Plaintiff, and Plaintiff placed it in the truck's center console. Id. Defendant Maiocco then "ordered" Plaintiff to call his boss and notify him that the police would not "let [him] go" until the detective finished interviewing all the witnesses. Id. ¶ 11. Plaintiff sat at the scene and waited "for a few hours" until Defendant Morroyoqui, an SAPD detective, arrived at the parking lot and began interviewing witnesses, including Plaintiff. Id.

During his interview, Plaintiff informed Defendant Morroyoqui that he had observed a white vehicle speeding away as he initially approached the parking lot and that his tow truck's dash camera may have captured footage of

the white vehicle. SAC ¶ 12. Defendant Morroyoqui asked Plaintiff if he could accompany him to another location to identify a vehicle, and Plaintiff, "feeling compelled," agreed. Id. ¶ 13. Plaintiff followed Defendant Morroyoqui's instruction to leave his tow truck at the parking lot where it would be "safe." Id. ¶ 14. Defendant Morroyoqui then drove Plaintiff to a different location; they were away for about 20 minutes. Id. ¶ 15. Upon returning to the parking lot, Defendant Morroyoqui asked to examine Plaintiff's dash camera. Id. ¶ 16. Plaintiff felt "compelled" to show Defendant Morroyoqui the dash camera, but after looking for the dash camera in his tow truck, he could not find it. Id.

At 2:12 a.m. the following morning, after having informed Defendant Morroyoqui that he could not find his dash camera, Defendant Morroyoqui told Plaintiff he was "allowed to go home." SAC ¶ 17. Before returning home, however, Plaintiff asked Defendant Maiocco and some other officers if they had seen anyone take his dash camera from his tow truck. Id. Defendant Maiocco and the officers informed Plaintiff they had not. Id. As Plaintiff was leaving the parking lot, he asked another officer if the officer had seen anyone remove his dash camera from his tow truck. Id. ¶ 18. The officer told Plaintiff that the police department has "policies and procedures" that require them to give "receipts" anytime they seize property. Id. ¶ 19. Plaintiff requested such a receipt, but the officer informed Plaintiff the police department could not provide him with a receipt for property the department had not seized. Id. Plaintiff then drove home. Id. ¶ 20.

On May 29, 2018 at around 2:30 a.m., Plaintiff arrived home. SAC ¶ 21. About four hours later, he received a call from Defendant Morroyoqui advising that SAPD officers were conducting follow-up interviews and he "needed" to drive to the SAPD station. Id. Plaintiff complied "without protest." Id. Plaintiff arrived at the police station at around 7:00 a.m. and met with Defendant Morroyoqui, who brought him into an interrogation room. Id. ¶ 22. Defendant

Morroyoqui questioned him about the events that had occurred at the parking lot the night before and asked why Plaintiff had not told the officers that he and the victim worked at the same towing company. Id. Defendant Maiocco then entered the interrogation room holding an electronic tablet. Id. ¶ 23. He made "verbal threats" to Plaintiff and told him that the police had video footage showing that he and the victim worked at the same towing company and had been together hours before the shooting. Id. Defendant Maiocco then showed Plaintiff footage from his dash camera on the tablet despite having said the night prior that the police had not seized his dash camera. Id. ¶ 24. Plaintiff believes Defendant Maiocco seized his dash camera on May 28, 2018 while officers detained him and conducted a warrantless search of the camera by viewing its contents sometime on May 29, 2018. Id. ¶ 35.

After playing the dash camera footage for Plaintiff, Defendant Maiocco said he would "make sure Plaintiff goes to prison for life," and that the dash camera footage is "all he needs." SAC ¶ 24. At Defendant Morroyoqui's request, Plaintiff gave his cell phone and passwords, and Defendant Morroyoqui then arrested and escorted him to a holding cell to be searched. Id. ¶ 26. Later that day, Defendant Morroyoqui booked Plaintiff into Orange County Jail, where he remains awaiting a preliminary hearing. Id. ¶ 27. On May 31, 2018, Plaintiff appeared before a magistrate for arraignment on California Penal Code §§ 664(a)-187(a), 182(a). Id. ¶ 28. California Penal Code Section 187(a) is the crime of murder, while Sections 664(a) and 182(a) refer to attempts and conspiracy to commit a crime, respectively.

Plaintiff alleges Defendants violated his Fourth Amendment and state law rights by: (1) detaining him for over three hours without probable cause or reasonable suspicion of any wrongdoing; and (2) searching his truck, seizing his dash camera from the truck, and viewing the camera's contents without a warrant. SAC at 5-8, ¶ 30. Plaintiff asserts Defendant David Valentin, SAPD

Chief, "allows his officers and detectives to engage in unlawful searches and seizures," and further claims the other defendants acted wrongfully, maliciously, and willfully. Id. ¶¶ 33-34. Plaintiff seeks (1) a declaratory judgment that Defendants violated his Fourth Amendment rights by unlawfully detaining Plaintiff and seizing his dash camera; (2) an injunction enjoining Defendants from engaging in unlawful searches and seizures of Santa Ana residents; (3) an injunction requiring Defendants to return Plaintiff's dash camera and cease viewing the contents of the camera; and (4) compensatory, nominal, and punitive damages. Id. at 15.

### III.

### STANDARD OF REVIEW

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court must dismiss the SAC, or a portion thereof, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). Similarly, "[a] district court may deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit." Minetti v. Port of Seattle, 152 F.3d 1113, 1115 (9th Cir. 1998) (per curiam) (as amended) (citation omitted). A complaint also may be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

In determining whether a complaint states a claim, its factual allegations must be taken as true and construed in the light most favorable to the plaintiff. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Courts construe the allegations of pro se complaints liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (as amended). However, "a liberal interpretation of a civil

rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (internal citations and footnote omitted); see also Iqbal, 556 U.S. at 678. A plaintiff must allege a factual and legal basis for each claim that is sufficient to give each defendant fair notice of what the claims are and the grounds upon which they rest. See, e.g., Brazil v. U.S. Dep't of the Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

If the Court finds that a complaint, or a portion thereof, should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez, 203 F.3d at 1126-30. Leave to amend should be granted if the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).

//

# IV.

# DISCUSSION

## A.   The Section 1983 Claim Appears Barred by the Statute of Limitations

Statutes of limitation prevent the assertion of stale claims by limiting the time within which claims must be filed. See Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1136 (9th Cir. 2001) (en banc). In Section 1983 actions, federal courts "borrow" the limitations and tolling rules from the forum state. Hardin v. Straub, 490 U.S. 536, 538 (1989); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). Federal courts thus apply California's personal injury limitations period for analogous Section 1983 claims arising in California. See Poucil v. Tilton, 704 F.3d 568, 573 (9th Cir. 2012) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). In California, the applicable statute of limitations is two years for such actions. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004). The accrual date of a Section 1983 cause of action, however, "is a question of federal law that is not resolved by reference to state law." Wallace, 549 U.S. at 388. Under federal law, a Section 1983 claim accrues, for the purposes of the running of the limitations period, when the plaintiff "knows or has reason to know of the injury that is the basis of the action." Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015).

Here, the accrual date of Plaintiff's Section 1983 claims is May 29, 2018, the date he was aware of his alleged injury. The limitations period expired two years later, on May 29, 2020, unless tolling applies. Plaintiff "filed" the action on October 21, 2021. Thus, absent sufficient tolling, the claim is untimely.

To the extent Plaintiff contends his claims accrued on a later date, the arguments lack merit. First, Plaintiff asserts his claims will not accrue until the date his ongoing state criminal proceedings are concluded or the date his criminal conviction or sentence is overturned, citing Heck v. Humphrey, 512

9

U.S. 477 (1994). Second Objections at 7. Plaintiff's reliance on Heck, however, is inapposite because where, as here, there is no conviction or sentence to be undermined by a grant of relief to a plaintiff, Heck does not apply. Bonelli v. Grand Canyon Univ., 28 F.4th 948, 953-54 (9th Cir. 2022). Also, when a plaintiff raises Fourth Amendment violations, as Plaintiff does here, the Heck doctrine does not alter the traditional, federal accrual rule that a cause of action for illegal search and seizure accrues when the wrongful act occurs. Id. at 952, 954.

Second, Plaintiff's reliance on Henderson v. United States, 517 U.S. 654, 657 n.2 (1996) to support the contention that "[i]n a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations" is also misplaced. Second Objections at 7. Contrary to Plaintiff's assertion, the Court in Henderson did not state that the mere fact that a complaint is filed, regardless of how long after accrual, satisfied the statute of limitations. Such a rule would have the effect of vitiating statutes of limitations. Rather, the Court considered whether the filing of the complaint, as opposed to the service of the complaint on a defendant, was the correct measuring point from which to measure when an action on a right created by federal law is "commenced," finding filing, not service, as the appropriate "commencement" date. See Henderson, 517 U.S. at 657 n.2.

Third, Plaintiff's argument that his claims have not yet accrued because he "he has been getting injure[d] continuously and the Defendants have not cease[d] violating his federal rights" (Second Objections at 9) also does not alter the accrual analysis. The continuing violations doctrine only applies in two scenarios: (1) when there are a series of related acts, one or more of which falls within the limitations period; and (2) the maintenance of a discriminatory system both before and during the limitations period. Bird v. Dep't of Human Servs., 935 F.3d 738, 746 (9th Cir. 2019) (per curiam). Here, the first scenario

does not apply because Plaintiff's SAC alleges Fourth Amendment violations that occurred on specific dates, May 28 and 29, 2018, which are outside the limitations period. Nor does the second scenario apply because the SAC does not allege a discriminatory system at all, much less during the limitations period. As such, Plaintiff's Section 1983 claims alleging Fourth Amendment violations accrued on May 29, 2018. See Wallace, 549 U.S. at 388. Thus, absent sufficient tolling, Plaintiff's claims are untimely.

      1.    <u>Statutory Tolling</u>

Once a claim has accrued, the limitations period may be tolled, that is, temporarily stayed, in certain situations. Federal courts apply the forum state's law regarding tolling, except where such laws are inconsistent with federal law. See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). In interpreting state law, the federal court is "bound by a state's highest court's interpretation of its own statute . . . ." See Briceno v. Scribner, 555 F.3d 1069, 1080 (9th Cir. 2009); Lewis v. Tel. Emps. Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996). "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." Briceno, 555 F.3d at 1080 (quoting Owen ex rel. Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983)).

Under California Code of Civil Procedure § 352.1 ("§ 352.1"), a plaintiff's imprisonment on a criminal charge "at the time the cause of action accrued" may toll the statute of limitations for up to two years. Subsection (a) of § 352.1 provides, in relevant part:

> If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the

1   commencement of the action, not to exceed two years.

2   In Elliott v. City of Union City, 25 F.3d 800, 802-03 (9th Cir. 1994), the Ninth

3   Circuit found "being continuously incarcerated prior to arraignment

4   constitutes being 'imprisoned on a criminal charge'" under California Code of

5   Civil Procedure § 352(a)(3), the predecessor to § 352.1. In Elliott, the plaintiff,

6   who had been in continuous custody from his arrest through his conviction,

7   sentencing, and subsequent imprisonment, filed a Section 1983 action while

8   imprisoned, asserting he had been subject to excessive force during his

9   underlying arrest. Id. at 801. After finding, at that time, that no California

10  court had considered whether the then-existing version of California Code of

11  Civil Procedure § 352(a)(3) applied to toll the limitations period in the pretrial

12  detention context, the Ninth Circuit, "[i]n the absence of controlling state

13  precedent," found that "'actual, uninterrupted incarceration is the touchstone'

14  for assessing tolling under § 352(a)(3), which covers all post-arrest custody,"

15  and therefore, "the statute of limitations applicable to [the plaintiff's] § 1983

16  action was tolled commencing at the time of his arrest and continuing through

17  his custody." Id. at 803 (citation omitted).

18      Recently, however, a California appellate court analyzed the new § 352.1

19  to determine if the statute of limitations is tolled when a claim accrues when a

20  plaintiff is in pretrial custody. Austin v. Medicis, 21 Cal. App. 5th 577, 582

21  (2018). In Austin, the plaintiff's claims accrued while he was in county jail,

22  where he remained until he was convicted and transferred to state prison. See

23  id. at 582, 590. Analyzing the statutory language and legislative history, the

24  state appellate court concluded that tolling is applicable only if the plaintiff is

25  serving a term of imprisonment "in the state prison" at the time of accrual. Id.

26  at 582. Because the plaintiff was "in pretrial custody" in county jail when the

27  claims accrued, "he was not 'imprisoned on a criminal charge' . . . and section

28  352.1 [did] not apply." Id. at 597. The court acknowledged the decision in

Elliott, but found it "unpersuasive," noting that it "predated the enactment of § 352.1," and thus did not have the benefit of the legislative findings on the subject. Id. at 590 n.4. The California Supreme Court declined review.

After Austin, there has been a split among federal district courts in California as to whether to follow Elliott or Austin in applying the tolling provisions of § 352.1 for plaintiffs whose claims accrued while in pretrial detention. Compare Alexander v. Cnty. of Los Angeles, 2021 WL 2407703, at * 4 (C.D. Cal. Mar. 18, 2021) (noting "[t]here is a split among the district courts as to" whether to follow Elliot and Austin, citing cases, ultimately following Elliott), report and recommendation adopted, 2021 WL 3857455 (C.D. Cal. Aug. 26, 2021), and Ruiz v. Ahern, 2020 WL 4001465, at *5 (N.D. Cal. July 15, 2020) (applying Elliott and declining to follow Austin, noting the Ninth Circuit has not overruled Elliott), with Sekerke v. Hoodenpyle, 2021 WL 973565, at *6 (S.D. Cal. Mar. 16, 2021) (following Austin), Ucci v. LAPD, 2020 WL 1032359, at *12 (C.D. Cal. Jan. 7, 2020) (following Austin), report and recommendation adopted, 2020 WL 1042273 (C.D. Cal. Jan. 7, 2020), Bell v. Mahoney, 2019 WL 6792793, at *6 (C.D. Cal. Aug. 29, 2019) (following Austin), Patrick v. McDermott, 2019 WL 10255472, at *6 (C.D. Cal. June 24, 2019) (following Austin), and Lockett v. Cnty. of Los Angeles, 2018 WL 6842539, at *2 (C.D. Cal. Oct. 25, 2018) (following Austin). In an unpublished memorandum decision, the Ninth Circuit stated that it was "obligated to follow" Austin in the absence of evidence that the California Supreme Court would rule to the contrary. Shaw v. Sacramento Cnty. Sheriff's Dep't, 810 F. App'x 553, 554 (9th Cir. 2020). More recently, the Ninth Circuit reiterated in an unpublished memorandum decision that a pretrial detainee was not entitled to the benefit of statutory tolling under Austin. Darbouze v. Christopher, 2022 WL 1769794, at *1 (9th Cir. June 1, 2022).

Here, applying Austin, Plaintiff is not entitled to tolling under § 352.1 as

he was not serving a term of imprisonment in state prison at the time his claims accrued. See Darbouze; Sekerke; Ucci; Bell; Patrick; Lockett. Further, at least with respect to his claims for unlawful detention, regardless of whether Elliot or Austin is applied, Plaintiff would not be entitled to tolling under § 352.1 because, after the alleged illegal detention, he was released and returned home, and thus was not in "continuous custody" from the time of the accrual of his claim until the filing of the action. See Elliott, 25 F.3d at 803 (noting that "'actual, uninterrupted incarceration is the touchstone'" of § 352.1 tolling) (citation omitted); Mabry v. Newton, 2020 WL 5092830, at *7 (C.D. Cal. July 16, 2020) (finding plaintiff not entitled to statutory tolling because he was "released to hospital" following the accrual of his claims and thus was not incarcerated at the time of, or immediately following, the relevant incident), report and recommendation adopted, 2020 WL 6784345 (C.D. Cal. Nov. 17, 2020); Jackson v. City of Inglewood, 2009 WL 699948, at *6 (C.D. Cal. Mar. 12, 2009) (finding plaintiff not entitled to statutory tolling because following the accrual of his claims, paramedics took him to the hospital, and thus he "was not arrested or taken into custody at the time [his claims accrued]"); see also McClain v. Brosowke, 2018 WL 1918533, at *4 (C.D. Cal. Apr. 20, 2018) (observing in dicta, without deciding the issue, that a civil rights plaintiff's release from police custody appeared to preclude § 352.1 tolling for claims arising during such custody) (footnote omitted).

    2.   Equitable Tolling

Federal courts also apply California's equitable tolling rules in applying the statute of limitations in § 1983 actions. See Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002). In California, equitable tolling is "a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Lantzy v. Centex Homes, 31 Cal. 4th

363, 370 (2003) (as modified) (citation omitted). Among other potential bases, California law allows for equitable tolling when a plaintiff possesses several legal remedies and reasonably and in good faith pursues one designed to lessen the extent of his injuries or damage, thereby allowing the statutory period to run. Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (footnote omitted). For equitable tolling to apply, a plaintiff must meet the requirements of California's three-pronged test by showing: (1) "timely notice" of the claim to the defendant; (2) "lack of prejudice" to the defendant; and (3) "reasonable and good faith conduct on the part of the plaintiff." McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 102 (2008); see also Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1204 (9th Cir. 2014).

The party asserting equitable tolling has the burden to show that the doctrine applies. See In re Marriage of Zimmerman, 183 Cal. App. 4th 900, 912 (2010) (as modified); see also Williams v. Holevinski, 295 F. App'x 167, 168 (9th Cir. 2008) (concluding the district court properly found that plaintiff was not entitled to equitable tolling because he failed to plead sufficient facts to account for his lack of diligence in pursuing remedies). Where the time-bar appears "on the face of the complaint," the plaintiff "has an obligation to anticipate the defense and plead facts to negative the bar." Union Carbide Corp. v. Superior Court, 36 Cal. 3d 15, 25 (1984); see also Reyes v. Healthcare Servs. Grp., Inc., 2015 WL 6551870, at *5 (C.D. Cal. Oct. 26, 2015).

In the SAC, Plaintiff alleges he exhausted alternate remedies before filing his present suit by timely submitting a claim with the City of Santa Ana ("the City") using a "Claim Against the City" form. SAC at 2, ¶¶ 29, 32. Plaintiff further asserts he never received a response from the City on his claim. Id. ¶ 32. Plaintiff contends his filing of the claim with the City, an attempt to pursue an alternate remedy, entitles him to the benefit of equitable tolling. Dkt. 8, ¶ 8.

Under the California Tort Claims Act, California Government Code

§§ 810, et seq., ("CTCA"), parties who seek to assert tort claims against a municipality must present claims to such municipality within six months of their accrual. See Cal. Gov. Code § 911.2(a). Timely presentation and rejection of claims are conditions precedent to civil suits against public entities under the CTCA. Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (citing Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995)). Plaintiff asserts he submitted a "Claim Against the City" on May 31, 2018. SAC ¶ 32. The issue is thus whether Plaintiff's pursuit of a state law tort claim within the limitations period results in equitable tolling of the statute of limitations on his Section 1983 claims and if so, for how long.

A claimant may be eligible for equitable tolling if he timely filed a separate, formal legal action, usually before a formally constituted agency authorized to adjudicate claims and provide a remedy. See Stone v. City & Cnty. of San Francisco, 735 F. Supp. 340, 343 (N.D. Cal. 1990). The timely filing of a state law tort claim arising out of the same facts as a subsequent Section 1983 suit in federal court may justify equitable tolling during the pendency of the state law claim so long as the claimant meets California's three-pronged test. Lucchesi v. Bar-O Boys Ranch, 353 F.3d 691, 696 (9th Cir. 2003); but see McMahon v. Albany Unified Sch. Dist., 104 Cal. App. 4th 1275, 1292 (2002) (finding the limitations period for a § 1983 claim is not tolled by the prior filing of CTCA claim).

Plaintiff asserts he is entitled to equitable tolling because, although he timely submitted a claim to the City on May 31, 2018, the City did not respond to his claim. SAC ¶ 32. But California Government Code § 912.4(c) provides that a claim sent to a government agency is deemed rejected if the claimant does not receive a response from the government agency within 45 days from submission. Further, under California Government Code § 945.6(a)(2), if a claimant does not receive a notice of rejection from the agency, the claimant

has two years from the accrual of the cause of action to file suit. In such circumstances, the two-year period functions as the statute of limitations. Dowell v. Contra Costa Cnty., 928 F. Supp. 2d 1137, 1152 (N.D. Cal. 2013).

Here, Plaintiff's state and federal law claims arise from the same alleged wrong under Lucchesi and thus could support a claim for equitable tolling during the pendency of Plaintiff's CTCA claim. However, any such equitable tolling would be limited to the time during which such claim was "pending." Because Plaintiff asserts he never received a written notice of rejection of his claim from the City, he had until May 29, 2020, two years after the accrual of his claim, to file a civil complaint against Defendants under the CTCA. He does not allege he filed a lawsuit asserting his state law tort claims in state or federal court during the two-year window following the accrual of his claims. Accordingly, for purposes of equitable tolling in this Court, Plaintiff's May 31, 2018 Notice of Claim is only considered to have been "pending" during the 45 days he awaited a response from the City, making Plaintiff eligible for equitable tolling of only 45 days on his Section 1983 claims in this Court. See Cal. Gov. Code § 912.4(c) (claim is deemed rejected if the claimant does not receive a response within 45 days); Williams v. Stockton Police Dep't, 2015 WL 756701, at *4 (E.D. Cal. Feb. 23, 2015) ("[T]olling applies only to the period during which the CTCA Claim was pending.") (report and recommendation adopted). Plaintiff did not file this action until more than three years after the accrual of his claims. Therefore, although Plaintiff may be eligible for the equitable tolling of his federal suit for the 45 days during which his notice of claim was pending before the City, Plaintiff's federal claims, filed more than three years later, are nonetheless time barred because Plaintiff failed to file his federal suit within that extended limitations period. See Williams, 2015 WL 756701, at *4 (finding that because the city denied plaintiff's CTCA claims more than 29 months before she filed a § 1983 suit, the two-year

1  limitations period barred the claims even with the benefit of equitable tolling).

2    Nor does Plaintiff's delay in filing suit due to his submission of a claim

3  form otherwise meet California's three-pronged test for equitable tolling. A

4  party seeking equitable tolling must show that its delay in filing was objectively

5  reasonable under the circumstances. Saint Francis Mem'l Hosp. v. State Dep't

6  of Pub. Health, 9 Cal. 5th 710, 729 (2020). A delay in filing a federal suit for

7  over two years while awaiting a response from a state agency on a notice of

8  claim is not reasonable. See Ucci, 2020 WL 1032359, at *14 ("Plaintiff cannot

9  allege facts showing that he acted reasonably when he delayed filing suit from

10  January 2013 (i.e., his latest accrual date) until October 2015 because he was

11  ostensibly waiting for the [Los Angeles Police Department] to investigate his

12  [Internal Affairs Group] Complaint."); cf. Garber v. City of Clovis, 698 F.

13  Supp. 2d 1204, 1214 (E.D. Cal. 2010) (observing that although the third

14  element of good faith and reasonable conduct on the part of the plaintiff is "less

15  clearly defined," "the plaintiff must file his second claim a short time after

16  tolling has ended"). Here, although Plaintiff timely filed a Claim under the

17  CTCA with the City on May 31, 2018, he delayed in filing the present suit for

18  nearly three years and five months after receiving no response. Such a lengthy

19  delay cannot be considered objectively reasonable.[2] See Abdullah v. City of San

20  Diego, 2021 WL 2588855, at *2 (S.D. Cal. June 23, 2021) (finding an 18-month

21  delay in filing complaint after the limitations period had expired was not

22  objectively reasonable) (footnote omitted). As such, Plaintiff has not shown he

23

24  [2] Even if Plaintiff did not know his claim was deemed rejected after 45 days of
 receiving no response from the City, such ignorance does not render his delay in

25  filing suit reasonable. See Byrd v. Phoenix Police Dep't, 2019 WL 8272640, at *1 (D.
 Ariz. Jan. 3, 2019) (finding a plaintiff's ignorance of the law regarding the proper

26  filing of a claim against the city form does not entitle a plaintiff to equitable tolling);
 Lopez v. Cate, 2011 WL 2936185, at *8 (E.D. Cal. July 18, 2011) ("[I]gnorance of

27  the law does not entitle plaintiff to equitable tolling.") (report and recommendation
 adopted).

28

is entitled to equitable tolling beyond the 45 days his timely CTCA claim against the City was pending, and, accounting for such tolling, his Section 1983 claims are untimely by over a year.

Additionally, Plaintiff asserts in his Second Objections that on June 21, 2018, he sent each Defendant a written "cease-and-desist" letter demanding that Defendants cease and desist violating his federal rights. Second Objections at 6. Plaintiff further contends that each letter stated that "failure to compl[y] with this demand letter or submit a response will constitute a knowing[], voluntary, unconditional[], and willful undisputed waiver of any statute of limitation and all immunities [and] defenses that may be available to you." Id. Plaintiff claims Defendants never responded to this letter. Id. As a result, Plaintiff now argues his claims are timely because Defendants waived their ability to raise the statute of limitations as an affirmative defense. Id. at 8-9. Plaintiff cites no authority by which a failure to respond to a letter constitutes the knowing and intentional relinquishment of a statute of limitations defense. See Cook v. Solorzano, 2019 WL 1367808, at *3 (E.D. Cal. Mar. 26, 2019) (rejecting plaintiff's argument that defendants waived any immunity by failing to respond to plaintiff's notice because plaintiff cited no law to support the assertion and the court was not aware of any law that would support it). Even were such a claim colorable, Plaintiff also cannot show that his nearly three-and-a-half-year delay in filing suit after mailing the cease-and-desist letters was objectively reasonable. See Ervin v. Los Angeles Cnty., 848 F.2d 1018, 1020 (9th Cir. 1988) (finding plaintiff ineligible for equitable tolling because she failed to show she acted reasonably and in good faith by delaying the filing of her federal civil rights action for over a year and a half after she became aware of the facts giving rise to her claim); Wade v. Ratella, 407 F. Supp. 2d 1196, 1206 (S.D. Cal. 2005) (declining to equitably toll inmate plaintiff's § 1983 claim because plaintiff had not explained his "lack of diligence" in prosecuting his

19

1  federal suit). Nor does Plaintiff's mailing of the cease-and-desist letters

2  constitute a "formal legal process" justifying the application of equitable tolling

3  here. See Hays v. Reyna, 2013 WL 3939860, at *6 (D. Or. July 30, 2013).

4  Plaintiff's submission of the cease-and-desist letters thus does not entitle him to

5  the benefit of any equitable tolling.

6      Finally, Plaintiff presents numerous policy arguments as to why the

7  Court should consider the merits of his claims despite his delay in filing suit,

8  asserting that his claims are "far from stale." Second Objections at 8-9. Plaintiff

9  first contends that dismissing his SAC as time barred would be "adverse to the

10  public" by allowing Fourth Amendment violations to occur without redress.

11  Second Objections at 8, 9. However, all statutes of limitations operate to bar

12  even potentially meritorious claims. California courts balance the injustice to

13  plaintiffs occasioned by limitations bars against the effects upon the important

14  public interest expressed by the limitations statutes when deciding whether to

15  equitably toll the statute of limitations. Jones, 393 F.3d at 928; see also Akhtar

16  v. Mesa, 2014 WL 1922576, at *8, n.7 (E.D. Cal. May 14, 2014), report and

17  recommendation adopted, 2014 WL 2895236 (E.D. Cal. June 25, 2014)

18  (rejecting plaintiff's argument that "general policy arguments" should serve as a

19  basis justifying equitable tolling). Plaintiff also cites to Jones, 393 F.3d at 929 to

20  argue that tolling rules that are inconsistent with the policy purposes of § 1983

21  should not be applied in such cases. Second Objections at 8. The court in Jones

22  found that the district court erred by failing to consider whether the plaintiff, a

23  civil detainee, was entitled to equitable tolling, holding that California's

24  equitable tolling doctrine operates to toll a statute of limitations for claims

25  asserted by a continuously confined civil detainee who has pursued his claims

26  in good faith. 393 F.3d at 930. Here, unlike the district court in Jones, this

27  Court has considered whether Plaintiff is entitled to equitable tolling. Further,

28  Plaintiff has not shown he acted reasonably and in good faith by delaying the

filing of his federal suit for nearly a year-and-a-half after the expiration of the statute of limitations, as discussed above. See Lal v. Ogan, 2019 WL 427294, at *4 (E.D. Cal. Feb. 4, 2019) (finding that plaintiff did not show good faith in prosecuting his § 1983 claim because his suit was untimely be nearly one-and-a-half years) (report and recommendation adopted). As such, the Court does not find Plaintiff's policy arguments regarding equitable tolling to be persuasive.

In sum, Plaintiff is at most entitled to 45 days of equitable tolling during the pendency of his CTCA claim. Thus, even with the benefit of this tolling, Plaintiff's claims are still untimely by over a year. As Plaintiff is not entitled to sufficient tolling, his Section 1983 claims are untimely.

**B.**   **Younger Abstention Is Not Warranted Here**

In the Second Report, the Court advised Plaintiff that were his § 1983 claims not time barred, this action could be subject to abstention under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971). Second Report at 17 n.3. Plaintiff in his Second Objections raises a new request that the Court order such abstention in the form of a stay of these proceedings under Younger in light of a pending hearing on a motion to suppress in his criminal proceeding. Second Objections at 8, 10. However, because Plaintiff's claims are time barred for the reasons discussed above, and because any pretrial decision on a motion to suppress is not a final determination of the state court proceedings, a stay of these proceedings does not appear warranted under Younger.

Plaintiff separately asserted in his Second Objections that he seeks an injunction barring the Defendants from engaging in unlawful searches and seizures of citizens of Santa Ana. Second Objections at 8. Such a request, in objections, is not appropriate. Further, even were such a request properly before the Court, and even if Plaintiff's claims were not time barred, the Court would lack the authority to issue such an injunction under City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983), which, in dicta, observed that federal courts

1  lack the authority "to entertain a claim by any or all citizens who no more than
2  assert that certain practices of law enforcement are unconstitutional." See
3  Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1040 (9th Cir. 1999)
4  (summarizing Lyons as a case in which the Supreme Court denied plaintiff's
5  request for an injunction barring the Los Angeles Police Department from
6  using chokeholds except in certain restricted circumstances because, in the
7  absence of a realistic threat of future injury, plaintiff could not show a case or
8  controversy with the City that would justify the equitable relief sought).

9  **C.  Leave to Amend Is Not Warranted for Plaintiff's Section 1983 Claims**

10      A pro se litigant must ordinarily be given leave to amend unless it is
11  absolutely clear that deficiencies in a complaint cannot be cured by further
12  amendment. Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per
13  curiam); see also Cato, 70 F.3d at 1106. If, after careful consideration, it is
14  clear that a complaint cannot be cured by amendment, the Court may dismiss
15  without leave to amend. See, e.g., Chaset, 300 F.3d at 1088 (holding that
16  "there is no need to prolong the litigation by permitting further amendment"
17  where the "basic flaw" in the pleading cannot be cured by amendment); Lipton
18  v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that
19  "[b]ecause any amendment would be futile, there was no need to prolong the
20  litigation by permitting further amendment").

21      The Court has repeatedly apprised Plaintiff of the statute of limitations
22  issue. With knowledge of that defect, Plaintiff twice requested, and the Court
23  twice granted, leave to amend. Plaintiff now, for a third time, seeks leave to
24  amend to add allegations regarding the cease-and-desist letters he claimed he
25  sent Defendants on June 21, 2018 and the forthcoming hearing scheduled on a
26  motion to suppress in his state criminal proceeding. Second Objections at 10.
27  As discussed above, however, these allegations do not alter the Court's finding
28  that Plaintiff's claims are untimely. The SAC and the new allegations in the

Second Objections thus suffer from the same defect as the Complaint and FAC and, at least to the federal claim, the defect is a legal defect, not the result of inartful pleading, and not subject to cure by further amendment.

As such, further leave to amend Plaintiff's Section 1983 claims does not appear warranted. See, e.g., Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); Ismail v. Cnty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987))).

**D.     Denial of Supplemental Jurisdiction Over Plaintiff's State Law Claims**

When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40 (2009). As a matter of comity, because the federal claims are subject to dismissal, the Court should decline to hear the remaining exclusively state law claims in the SAC and dismiss those claims without prejudice. Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1101 (9th Cir. 1996) (holding that "[w]here a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice").

## V.

## CONCLUSION AND ORDER

Plaintiff is ORDERED to, within 30 days from the date of this Order, show cause, in writing, why this action should not be dismissed without leave to amend and with prejudice for the reasons set forth above.

1    Plaintiff is cautioned that a failure to comply with this Order could result

2  in the action being dismissed for the foregoing reasons and for failure to

3  prosecute and/or comply with a Court order. See Fed. R. Civ. P. 41(b).

4

5  Dated: June 17, 2022 _____    _____

6                                 JOHN D. EARLY
                                   United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28